IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

*In re:*

ANDRE C. BROWN AND
SHEOKIE T. BROWN,

 CASE NO. 21-10581-JCO-7

Debtors.


CLAY E. CAMPBELL, JR.,

 Plaintiff,

v. ADV. PROC. NO. 21-01022-JCO

ANDRE C. BROWN AND
SHEOKIE T. BROWN,

 Defendants.

## **MEMORANDUM OPINION AND ORDER**

 This matter came before the Court for trial on the Adversary Complaint filed by the Plaintiff, Clay E. Campbell (doc.1) and the Answers and Cross Complaint filed by the Debtor/Defendants, Andre and Sheokie Brown[1]. (Docs 18, 19, 21.) Appearances were noted by *pro se* Plaintiff, Clay Campbell ("Campbell"), the Debtors, Andre and Sheokie Brown (the "Browns") and Attorney William J. Casey as counsel for the Browns. Having considered the record, pleadings, exhibits, testimony, and arguments, the Court finds for the Browns on Campbell's Adversary Complaint and in favor of Campbell on the Browns' Counter-Complaint for the following reasons:

---

[1] Herein Andre Brown is referred to as Mr. Brown and Sheokie Brown is referred to as Mrs. Brown.

1

PROCEDURAL BACKGROUND

In August 2017 an "Incident" occurred wherein the Browns removed items of personal property and a vehicle from real property located at 2936 Billy Williams Drive, Eight Mile, Alabama, ("Billy Williams Drive Property") in which Campbell claimed an interest. Campbell subsequently filed a police report (doc. 9) which led to Mrs. Brown's arrest; however, the charges were later dropped. Campbell then filed a civil suit in the Mobile County District Court and was awarded $13,500.00 against the Browns on or about April 7, 2020. The Browns appealed but upon their failure to appear for trial, a default "Judgment" was entered January 7, 2021. (*Id.* at 3,4) Campbell recorded the Judgment in Mobile County Probate records on March 1, 2021. Campbell also issued a Writ of Fieri Facias ("Writ") on or about February 24, 2021 seeking a Sheriff's Levy and Sale of the Browns' interest in property located at 3225 Morgan Road, Mobile, Alabama 36605 ("Morgan Road Property").

The Browns filed their Petition under chapter 7 of the Bankruptcy Code ("Chapter 7 Case") on March 26, 2021. (S.D. Bankr. 21-10581). As a result of the pre-petition Writ, despite notification from the Browns' attorney of the bankruptcy (doc. 23 at 4), a sheriff's sale was held on April 14, 2021. The Browns filed a cross claim against the Mobile County Sheriff, Sam Cochran and Christopher Callaghan related to the sale but those claims have since been dismissed. (Docs. 21, 22, 27).

Campbell filed a proof of claim in the Chapter 7 Case denoting his claim as secured. (ECF Claim 1-1.) Campbell then initiated this Adversary Proceeding *pro se* seeking to have his pre-petition judgment declared non-dischargeable, his claim treated as secured, and a determination

2

that the Browns made false statements about their estate. The Browns counter-claimed asserting violation of the automatic stay related to the sheriff's sale and malicious prosecution arising from the criminal matter.

On August 9, 2021, the Chapter 7 Trustee filed a Report of No Distribution stating in part, " I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered." (S.D. Bankr. 21-10581, Doc. 49).

## FINDINGS OF FACT

It is undisputed that the Browns entered upon and removed personal property and a vehicle from the Billy Williams Drive Property. However, their testimony at trial established that they believed they had the right to possession when they received a tax deed from the State of Alabama.[2] Mrs. Brown stated that she made an offer to purchase the Billy Williams Drive Property which was listed for sale on the Alabama Department of Revenue's website. On or about June 16, 2017, upon receiving acceptance of her offer, she left a 30 day notice ("Notice") at the door of the Billy Williams Drive Property informing the occupant of her interest.[3] She also stated that upon receiving the tax deed for the Billy Williams Drive Property, she understood she owned it.

---

[2] The Court does not purport to conclusively adjudicate the status of title to the Billy Williams Drive Property or whether the Browns obtained a tax certificate or a deed. The Court simply notes that the Browns' testimony was that they received a deed to the Billy Williams Drive Property.

[3] Mrs. Brown explained that she was doing business under the name as Jireh Investments at the time and that Jireh Investments is not separately incorporated.

Mrs. Brown's testimony indicated that she understood the Billy Williams Drive Property was vacated and the personal property was abandoned. She testified that Campbell's sister, JeJuan Campbell, contacted her after receiving the Notice and advised that she had moved out. Additionally, Mrs. Brown's testimony established than when she went to clean up the Billy Williams Drive Property, she did not believe it was habitable based on her observations that: (1) the door was ajar; (2) it had flooded; (3) there was no running water; (4) the ceiling was propped up; (5) the rafters in the kitchen were exposed; and (6) mold was present.

As to the contents of the home, Mrs. Brown explained they were placed on the curb because they appeared to be trash and had water damage. She also stated that she thought the automobile was a junk vehicle and she had it towed because: (1) she did not believe it was operational; (2) it did not have a tag; and (3) there were loose mechanical parts in the back seat. She testified that she did not retain any of the items from the Property and was not aware of Campbell or any interest he may have. She further testified that upon receiving a cease and desist letter from Campbell's former attorney, she and Mr. Brown never went back to the Property and they provided the information for the towing company to Campbell's sister.

Mr. Brown's testimony was consistent with Mrs. Brown's. He testified that he understood Campbell's sister had vacated the property and no one was living there. His inspection of the Billy Williams Drive Property was the same including: the front door was left open, there was no running water, there was ceiling damage, and it was flooded. He too concluded that no one was living there. He also testified that the vehicle did not have a tag and it did not appear to be operational. Like Mrs. Brown, Mr. Brown also stated that he had no idea of Mr. Campbell's interest, had no reason to try to hurt him or his property, and they thought they were following the

4

Case 21-10581    Doc 59    Filed 10/05/22    Entered 10/05/22 13:32:33    Desc Main
Document    Page 4 of 18

law because they had a deed. He further reiterated that when they received a cease and desist letter from Mr. Campbell's former attorney, they stopped all actions.

Campbell disputed the Browns' assertions that the Billy Williams Drive Property was not livable, contended that someone was living there, and stated that the vehicle could be driven. He testified that although he has not resided in the Billy Williams Drive Property since he moved away in 1999, his sister had lived there. Since he resides out of state, Campbell stated that he learned about the Browns' activities at the Billy Williams Drive Property when a neighbor called him and sent him a picture showing items on the curb. Campbell testified that he inherited an interest in the Billy Williams Drive Property and owned it with his sister. Campbell established that the Browns did not contact him personally or obtain a court order before entering the Property and removing the contents and the vehicle.

There was no dispute, that at the time of the Incident, the Browns had a tax deed to the Billy Williams Drive Property or that they left a Notice at the Property advising of their purchase.[4] Campbell did not call any witnesses to refute the Browns' assertions that: (1) they understood from Campbell's sister that she had moved out; (2) the condition of the Billy Williams Drive Property and the personal property was such that a reasonable person could conclude they were abandoned; or (3) that they provided the name of the towing company to Campbell's sister. There was also no dispute that the Browns ceased all activities at the Billy Williams Drive Property upon receipt of communication from Campbell.

---

[4] Although the Browns did not introduce a copy of the deed to the Billy Williams Drive Property into evidence, both Mr. and Mrs. Brown testified at the trial that they received a deed from the State of Alabama. Since Mr. Campbell did not refute such contention, the Court understood that fact to be undisputed for purposes of adjudicating this matter. However, the Court reiterates that this Opinion should not be construed to constitute any legal findings with regard to the actual status of title of any of the properties referenced herein. Further, the Court does not find the issue of whether the Browns purchased a tax deed or a tax certificate material to the matters adjudicated.

In regard to the counter-claim allegations, Mrs. Brown testified that her arrest, as a result of Campbell's criminal complaint, was a traumatic experience. She stated that she has never been in trouble before, it caused her problems at work, she was booked into the jail and held with other people, and she had to post bond and hire an attorney. Further, Mrs. Brown testified that the Sheriff's Sale which was conducted post-petition, purporting to sell the Browns' interest in the Morgan Road Property was extremely stressful as she was worried her family would be placed out of the home.

In response, Campbell testified that when he received notice that the Browns filed bankruptcy on April 4, 2021, he did not take any further action to pursue the Sheriff's Sale. He stated he thought that was what he was supposed to do. He further indicated, and the record reflects, that when he found out the Sheriff's Sale was held, he tried to reverse it by sending letters to the state court as well as this court. (Doc. 16).

The Browns testified that they acquired their interest in the Morgan Road Property from a tax sale and it is their residence. However, they contend, and Campbell did not dispute, that there is an outstanding SBA lien of record in the name of the prior owner. (Doc. 12). Further the record reflects that Mrs. Brown forged a deed to the Morgan Road Property and presented it to the Revenue Commissioner to have it assessed in her name. Hence, from the pleadings and evidence presented, it appears to the Court that the Browns do not have clear marketable title to the Morgan Road Property. The Browns also stated in their pleadings (Docs. 18,19) that although they purchased a tax deed for another property at 900 W. Main Street in Prichard, Alabama ("Main Street Property") in 2017, the prior owners purchased it back but just had not recorded the deed. No evidence to the contrary was presented at the trial.

## ANALYSIS

<u>The Evidence Presented Did Not Establish That The Browns' Conduct Constituted
Willful And Malicious Injury As Contemplated Under §523(a)(6)</u>

A Chapter 7 debtor is generally entitled to a discharge of all debts that arose prior to the filing of the bankruptcy petition. *In re Mitchell*, 633 F.3d 1319, 1326 (11th Cir.2011) (citing 11 U.S.C. §727(b)). "[T]his 'fresh start' policy is only available to the 'honest but unfortunate debtor.'" *Id.* (quoting *In re Fretz*, 244 F.3d 1323, 1326 (11th Cir.2001)). To ensure that only the honest but unfortunate debtors receive the benefit of discharge, Congress enacted several exceptions to §727(b)'s general rule of discharge." *Id.; see also In re Kane*, 755 F.3d 1285, 1292 (11th Cir. 2014). One such statutory exception to discharge provides:

> . . . A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . .

11 U.S.C. 523 (a)(6).

Given the fresh start policy of the Bankruptcy Code, the court has an obligation to construe exceptions to dischargeability strictly against the creditor and liberally in favor of the honest debtor. *SE Prop. Holdings, LLC v. Gaddy* (*In re Gaddy*), 977 F.3d 1051, 1059-60 (11th Cir. 2020). Further, the Supreme Court has provided guidance in interpreting 523(a)(6), holding that the word "willful" in (a)(6) modifies the word "injury". *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998). Thus, a finding of nondischargeability under 523(a)(6) requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Id.* Not every tort judgment for conversion is exempt from discharge. *Davis v. Aetna Acceptance* Co.,

293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Negligent or reckless acts, without more do not suffice to establish that a resulting injury is willful and malicious. *Id.*

A debtor commits a willful and malicious injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury. 11 U.S.C.A. § 523(a)(6). *In re Jennings*, 670 F.3d 1329 (11th Cir. 2012); see also, *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (holding that §523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury). Proof of "willfulness" requires a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another. *In re Walker*, 48 F.3d 1161, 1163 (11th Cir.1995) (quoting *In re Ikner*, 883 F.2d 986, 991 (11th Cir.1989)). "Malicious" means wrongful and without just cause or excessive even in the absence of personal hatred, spite. or ill-will. *Id.* To succeed on a dischargeability claim, the creditor must prove the applicability of §523(a)(6) by a preponderance of the evidence. *In re Kane*, 755 F.3d 1285, 1293 (11th Cir. 2014)(citing *Grogan v. Garner,* 498 U.S. 279, 111 S. Ct. 654 (1991)). Therefore, determinations of whether a debtor's conduct justifies denial of dischargeability of a debt under §523(a)(6) are fact sensitive.

Campbell contends that his Judgment should not be discharged because of the Browns' actions of entering the Billy Williams Drive Property and removing items. As the Judgment does not provide any factual findings addressing whether the Browns' actions were considered willful and malicious, that is left to be determined in this proceeding. The Court is sympathetic to Campbell's situation of living out of state and receiving a call from a neighbor advising that someone had entered and was removing items from the Billy Williams Drive Property. The Court does not condone persons entering upon realty or removing personal property without full investigation and notice to interested persons and does not wish to encourage individuals in

proceeding with legal matters without the benefit of counsel. That said, this Court can only apply the law to the facts of the case.

Campbell did not prove, by a preponderance of the evidence, that the Browns' actions were willful or malicious. The Court found the Browns' testimony credible that: (1) they thought the tax deed gave them the right to enter upon the Billy Williams Drive Property; (2) they delivered a Notice to the Billy Williams Drive Property advising of their interest in advance; (3) they understood from communication with the last known occupant that she had vacated and did not want the property; (4) they did not believe the Billy Williams Drive Property was habitable from their personal observations; (5) they considered the items left as abandoned, water damaged, and of no value; and (6) they had no actual knowledge of or intent to cause injury to Campbell or his property.

The Court understands Campbell's contentions that the Browns did not notify him or obtain a court order before removing items. The Browns certainly could have made more efforts or exercised better judgment. Even so, the Court also recognizes that Alabama law related to tax sales is complicated. Given the Browns' testimony, which the court found credible, it cannot conclude that the Browns' actions were willful or malicious. In sum, while the entire course of events is unfortunate, the Browns' actions do not rise to the level required by §523(a)(6). There is no evidence that the Browns intended to cause any injury specifically to Campbell or that their actions were without just cause considering the circumstances. Thus, in recognizing that exceptions to discharge should be strictly construed, the Court finds Campbell's request for relief under §523(a)(6) must be denied.

## Whether Campbell Has A Secured Claim is Immaterial To the Administration of the Debtors' Underlying Chapter 7 Proceeding

Generally, bankruptcy courts do not rule on the validity of proof of claims in no-asset chapter 7 cases. *In re Shapiro v. United States* 188 B.R. 140, 148 (Bankr.E.D.Pa.1995) (stating that a bankruptcy court may exercise its discretion not to resolve claims "when the estate will provide no distribution to the creditor"). An allowed claim in bankruptcy permits the creditor who holds the claim to share in the distribution of assets from the bankruptcy estate. *Ziino v. Baker*, 613 F.3d 1326, 1328 (11th Cir. 2010). The sole purpose of a proof of claim is to provide a means for the creditor to assert this right. *Id.; see also Deutsch–Sokol v. Northside Sav. Bank (In re Deutsch–Sokol)*, 290 B.R. 27, 31 (S.D.N.Y.2003). Thus, where there are no assets to distribute, a proof of claim serves no practical purpose. 4 *Collier on Bankruptcy* ¶ 501.01[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2015). For this reason, creditors in no-asset chapter 7 cases are informed that it is unnecessary to file claims. *Id.* See *Fed. R. Bankr.P.*2002(e); *see also In re Bailey*, No. 10–62834, 2010 WL 4702354, at 3 (Bankr.N.D.Ga. Nov. 17, 2010).

It is not necessary for the Court to adjudicate Campbell's request for a secured claim in the Browns' Chapter 7 Case at this point. The Chapter 7 Trustee has already filed a final report in the case. (Bankr. S.D. Ala. 21-10581, Doc. 49). The Trustee's report reflects that upon diligent inquiry into the financial affairs of the debtors and the location of the property belonging to the estate, there is no property available for distribution from the estate over and above that exempted by law. *Id.* Hence, regardless of whether Campbell's claim is secured or unsecured, he will not receive any distribution in the Chapter 7 Case. Therefore, since there are no assets to distribute, a ruling on whether Campbell's claim is secured or unsecured is of no consequence in the administration of the Debtors' Chapter 7 Case.

10

Notwithstanding the forgoing, the Court recognizes that neither the determination that Campbell's debt is dischargeable in the Debtors' Chapter 7 Case , nor the lack of an adjudication of Campbell's claim as filed, necessarily invalidates any lien interest that Campbell may assert. Generally, lien interests in property, pass through or survive a Chapter 7 bankruptcy. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992*); Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991); *In re Dippel*, 2005 WL 758801, (S.D.Fla.). However, review of the record in the Chapter 7 reflects that the Debtors have a pending Motion to Avoid Campbell's lien in their Chapter 7 Case. (Bankr. S.D. Ala, 21-10581, Doc.7). Hence, the Court will reserve its analysis and ruling on the validity of Campbell's lien until the appropriate time.

<u>There Is Insufficient Evidence To Conclude That The Debtors<br>Made False Statements Concerning Their Estate</u>

Section 727 of the Bankruptcy Code, provides in part that Chapter 7 Debtors who knowingly and fraudulently make false oath or account in or in connection with the chapter 7 case are not entitled to a discharge. 11 U.S.C §727(a)(4)(A). A creditor seeking denial of discharge based on debtor's false oath or account must establish the following elements by a preponderance of the evidence: (1) the debtor made the statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Tipler*, 360 B.R. 333 (Bankr. N.D. Fla. 2005); *see also Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir.1991); *Chalik v. Moorefield*, 748 F.2d 616 (11th Cir.1984). Deliberate omissions from the schedules or statement of financial affairs may also constitute false oath or account. *Swicegood,* 924 F.2d at 232; *Chalik*, 748 F.2d at 618.

11

The purpose of the subsection of the Bankruptcy Code denying a debtor a discharge for having made a false oath or account is to ensure that sufficient facts are available to all persons interested in the administration of the bankruptcy estate without requiring investigations or examinations to discover whether the information provided is true. For discharge denial purposes, there is a difference between a debtor who is trying to hide assets with a false oath or material omissions in his statement of financial affairs, and a debtor who, through inadvertence, mistake, or ignorance of the issue of materiality in his disclosures, omits certain assets in his original statement of financial affairs. *In re Dupree,* 336 B.R. 490 (Bankr. M.D. Fla. 2005). In discerning whether the debtor has the requisite fraudulent intent to justify the denial of his discharge pursuant to §727(a)(4)(A), the Court should analyze the omissions or nondisclosures as to whether they were part of a scheme on the part of the debtor to retain assets for his own benefit at the expense of his creditors. *In re Dupree* at 494. The statute is to be construed liberally in favor of the debtor and strictly against the objector. *In re Leffingwell*, 279 B.R. 328, 338 (Bankr.M.D.Fla.2002) (citing *Second National Bank v. Parker* (*In re Parker*), 85 B.R. 384, 387 (Bankr.E.D.Va.1988)).

The Plaintiff failed to establish by a preponderance of the evidence that the Debtors knowingly and fraudulently made false statements or material omissions in or in connection with their Chapter 7 Case. Although Campbell alleges that the Browns made false statements about their interest in two parcels of real property, specifically, the Morgan Road Property and the Main Street Property, the evidence presented was to the contrary. With regard to the Morgan Road Property, it is disclosed in their bankruptcy schedules. (Bankr. S.D. Ala., 21-10581, doc 1 at 17). Additionally, there was no dispute that there is an SBA lien of record or that Mrs. Brown forged the deed to have the Morgan Road Property assessed in her name. Since the Debtors do not have clear title to the Morgan Road Property, the Court finds the disclosure of their interest sufficient.

Secondly, as to the Main Street Property, although it was not listed in the schedules, the Debtors' pleadings reflect that they bought it from a tax sale in 2017 and the prior owners purchased it back that same year and just had not recorded their deed. No evidence was offered to refute such contention. Although Mrs. Brown's forgery of the Morgan Road Property deed is troubling, it does not appear to the Court that the Debtors are trying to hide assets or that they made any knowingly false material omissions in their bankruptcy schedules. Therefore, the Court does not find sufficient grounds to deny the Debtors a discharge under 11. U.S.C §727(a)(4).

<u>Campbell's Actions and Inactions Do Not Rise to the Level of a Willful Stay Violation</u>

Absent a statutory exception, the filing of a bankruptcy petition, Section 362(a) of the Bankruptcy Code operates a stay applicable to all entities of:

> 1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; . . .

11 U.S.C. §362 (a)(1)-(6).

The automatic stay is one of the fundamental debtor protections provided by bankruptcy laws. *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986). Actions taken in violation of the automatic stay are void ab initio. *In re Briskey*, 258 B.R. 473, 476–77 (Bankr. M.D. Ala. 2001)(citing *In re Albany Partners*, 749 F.2d 670, 675 (11th Cir.1984); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982)). Additionally, individuals injured by willful violations of a stay may seek damages.11 U.S.C. §362(k).

The debtor has the burden to establish that a violation of the automatic stay occurred and was willful. *In re Harrison*, 599 B.R. 173, 183 (Bankr. N.D. Fla. 2019). In the Eleventh Circuit, a violation of the stay is willful if the offending party "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." *Id.* (citing *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)). Bankruptcy courts within the Eleventh Circuit have held that the failure to take affirmative action to stop a stay violation is itself a violation of the automatic stay subject to sanctions under 11 U.S.C. §362(k). Yet courts have also noted that when a violation of the stay is inadvertent, contempt is not an appropriate remedy. *Harrison* at 183; *see also In re Collum*, 604 B.R. 61, 67 (Bankr. M.D. Ala. 2019). Notwithstanding the foregoing, a creditor has a duty to undo actions taken in violation of the automatic stay and failure to undo a technical violation may elevate the violation to a willful one. *Id*.

The Browns' stay violation claims relate to Campbell's pre-petition issuance of a Writ which led to a post-petition sheriff's sale. The post-petition sale was indisputably in violation of the automatic stay and as a result is void ab initio. However, Campbell's testimony was sufficient to convince the Court that the violation was not willful. Campbell testified that upon receiving

14

notice of the Browns' bankruptcy, he did not take any further action to pursue the sale and he thought that is what he was supposed to do. Once he realized the sale took place, Campbell also tried to resolve the matter and have it rescinded. In light of Debtors' counsel's representations that the notice of the bankruptcy was served on the Sherriff's office, it seems the sale was the result of an administrative oversight by the Sheriff's department. Although it would have been appropriate for Campbell to take affirmative actions to ensure that the sale did not go forward, the Court does not believe that Campbell understood or intended that the Sheriff would proceed with the sale after the bankruptcy was filed. Therefore, the Court does not find that the violation was willful or that damages are appropriate under the circumstances.

<u>The Brown's Counter-Claim Asserting Malicious Prosecution Is Untenable</u>

1. *The Court Lacks Jurisdiction To Adjudicate the Malicious Prosecution Claim.*

Malicious Prosecution Claims are based on state tort law and not upon any right created by the Bankruptcy Code. Bankruptcy courts have limited jurisdiction of such matters. Additionally, the United States Supreme Court has held with regard to §157 (b)(2)(C), that bankruptcy judges lack the constitutional authority to adjudicate a state law counter-claim by the debtor against any entity which filed a proof of claim unless the counterclaim stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. *Stern v. Marshall,* 564 U.S. 462 at 499, 131 S.Ct. 2594 at 2618, 180 L.Ed.2d 475.

The Browns' allegations of malicious prosecution against Campbell are asserted as counter-claims. However, the malicious prosecution claim does not stem from the bankruptcy itself and need not be resolved in a claims allowance process. Therefore, the counter-claim for malicious prosecution is not properly before this Court. Notwithstanding the forgoing, even if the

parties were deemed to have consented to jurisdiction of the Court, the outcome would not be favorable to the Debtors.

## 2. *Campbell's Affirmative Defenses Refute the Malicious Prosecution Claim*

Under Alabama Law, the statutory limitations period applicable to actions alleging malicious prosecution is two years. §6–2–38(h), Ala.Code 1975. Alabama's compulsory counterclaim rule tracks Rule 13(a) of the Federal Rules of Civil Procedure, whose purpose is "to prevent multiplicity of actions" by "[resolving] in a single lawsuit ... all disputes arising out of common matters." *Ferrari v. E-Rate Consulting Servs.*, 655 F. Supp. 2d 1194, 1198 (M.D. Ala. 2009)(citing *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962)). Thus, if such a counterclaim is not brought with the original action, "relitigation of the claim may be barred by the doctrines of res judicata or collateral estoppel by judgment in the event certain issues are determined adversely to the party electing not to assert the claim." *Id. at 1198.*

Campbell's filing of a criminal offense report, which led to Mrs. Brown's arrest, was based on the Incident at the Billy Williams Drive Property which Campbell alleged was burglary and theft. After dismissal of the criminal case, Campbell filed a civil action against the Browns in state court stemming from the same set of facts. So at the time that Campbell filed the state court litigation, his actions to pursue criminal charges against the Browns had concluded. Yet it seems that the Browns are trying to assert their claims for malicious prosecution for the first time in this Adversary Proceeding. Since the events giving rise to the malicious prosecution claim occurred in 2018, the statute of limitation ran on any such claims prior to the Browns' Chapter 7 Case. Further, the state court already adjudicated the dispute related to the Incident between the parties back in 2020. Had the Browns wished to pursue a counter-claim against Mr. Campbell, they could

16

and should have asserted it during the pendency of the state court matter under Rule 13 of the Alabama Rules of Civil Procedure. Hence, the applicable provisions of Alabama law and procedural rules further prohibit this Court from considering the Browns' malicious prosecution claims at this late date.

### 3. Probable Cause Is a Viable Defense to Malicious Prosecution Claim

Despite the above dispositive findings on the Browns' malicious prosecution claim, the Court will provide further analysis for the benefit of the parties. Under Alabama law, to prevail on a claim for malicious prosecution the claimant must prove the following elements: (1) judicial proceeding; (2) initiated by the defendant; (3) without probable cause; (4) malice on the part of the defendant;(5) termination of the judicial proceedings favorable to the plaintiff; and (6) damages. *King v. Farrell*, 55 Ala.App. 147, 314 So.2d 68 (1975). If any of these elements is lacking, the result is fatal to the action. *Ford Ins. & Real Estate Co. v. Thrasher*, 45 Ala.App. 592, 234 So.2d 590 (1970). Probable cause in the context of a malicious-prosecution claim is defined as a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged. *Heining v. Abernathy*, 295 So. 3d 1032 (Ala. 2019); *see also Moon v. Pillion*, 2 So. 3d 842 (Ala. 2008); *Eidson v. Olin Corp.*, 527 So. 2d 1283 (Ala. 1988). Malicious prosecution is an action disfavored in the law and therefore the party claiming it has the strict burden of proving a negative—i.e., the complete absence of a scintilla of probable cause. *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988); *see also Cutts v. American United Life Insurance Co.*, 505 So.2d 1211, 1212 (Ala.1987); *Alabama Power Co. v. Neighbors*, 402 So.2d 958 (Ala.1981).

The evidence established that when Campbell filed the criminal complaint, he had reasonable grounds to suspect that the Browns were guilty of the offense charged. Campbell

provided credible testimony that he believed that his family's home had been illegally entered and that the personal property was unlawfully taken. It was undisputed that the Browns did not personally contact or notice Campbell of the issuance of the tax deed before their entry upon the Billy Williams Drive Property and did not obtain an order to allow a personal property eviction. Hence, although Campbell (as well as the Browns) may have been uninformed as to certain aspects of the facts or the law, there is insufficient evidence to conclude that Campbell lacked probable cause to file the criminal offense report.

## CONCLUSION

For the reasons noted above, the Court FINDS IN FAVOR OF THE BROWNS ON CAMPBELL'S CLAIMS contesting discharge and dischargeability and FINDS IN FAVOR OF CAMPBELL ON THE BROWNS' COUNTERCLAIMS asserting stay violation and malicious prosecution. Accordingly, neither party is entitled to the relief sought and costs of the proceedings are taxed as paid.

Dated: October 5, 2022

JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE